# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE SOULIOTES,<br><br>        Petitioner,<br><br>v.<br><br>ANTHONY HEDGPETH, Warden,<br><br>        Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1:06-cv-00667 AWI MJS HC

PRE-HEARING ORDER

Pre-Hearing Motions:
    Filing Deadline: January 18, 2012
    Response Deadline: January 20, 2012

Joint Stipulations To Be Filed By:
    January 20, 2012

Evidentiary Hearing:
    Date: January 24, 2012
    Time: 9:30 a.m. (3-5 days est.)
    Courtroom: 6 (MJS)

On January 5, 2012, this Court and the parties convened a conference in this matter in preparation for the evidentiary hearing to be held pursuant to order of the Ninth Circuit Court of Appeals. Petitioner, George Souliotes, appeared by counsel Jimmy McBirney and Megan Crane, of Orrick, Herrington, & Sutcliffe, LLP. Respondent Anthony Hedgpeth, Warden, Salinas Valley State Prison, appeared by counsel Kathleen McKenna of the Office of the Attorney General of California. Pursuant to Fed. R. Civ. P. 16(d)-(e), the Court issues this final pre-hearing order.

## I.     SUMMARY

On August 17, 2011, the Ninth Circuit remanded this case to this Court for further proceedings. The order, in its entirety, states:

> In light of the intervening en banc decision in <u>Lee v. Lampert</u>, No. 09-35276, 2011 U.S. App. LEXIS 15830, 2011 WL 3275947 (9th Cir. Aug. 2, 2011) (en banc), we vacate our opinion in <u>Souliotes v. Evans</u>, 622 F.3d 1173 (9th Cir. 2010), reverse the district court's dismissal of Souliotes's habeas petition as untimely, and remand for proceedings consistent with Lee.
>
> We also vacate our order of limited remand issued on May 25, 2011, with the understanding that the district court will conduct whatever proceedings are necessary, in an expedited manner, to determine whether any of Souliotes's habeas claims may be addressed on the merits.

<u>Souliotes v. Evans</u>, 2011 U.S. App. LEXIS 17034, 1-2 (9th Cir. Aug. 17, 2011).

Consistent with the Ninth Circuit's instructions, this Court will conduct an evidentiary hearing beginning January 24, 2012, for the purpose of making findings and recommendations on the issue of whether the statute of limitations was tolled or otherwise excepted with regard to the claims in Petitioner's federal petition. Specifically, the Court shall address and determine the following issues in light of the evidence presented at the hearing: (1) whether with regard to Petitioner's stand-alone claim of actual innocence, Petitioner satisfies the diligence requirement of § 2244(d)(1)(D) relating to his discovery of new medium petroleum distillate ("MPD") evidence; and, (2) whether there is a showing of actual innocence sufficient to entitle Petitioner to an equitable exception (under <u>Schlup v. Delo</u>, 513 U.S. 298, 331-332 (1994)) to AEDPA's limitations period relating to Petitioner's substantive claims for relief.

## II.   JURISDICTION AND VENUE

Jurisdiction is appropriate pursuant to 28 U.S.C. § 2254(a). Petitioner challenges a conviction occurring in Stanislaus County, and therefore venue is proper under 28 U.S.C. § 2241(d).

## III.   HEARING BEFORE A JURY OR THE COURT

Rule 8 of the Rules Governing Section 2254 Cases requires evidentiary hearings in federal habeas petitions to be heard before the Court.

## IV.   ESTIMATED LENGTH OF HEARING

The parties estimate the evidentiary hearing will last four days.

///

V.    **HEARING DATE**

The hearing will commence on January 24, 2012 at 9:30 a.m. in Courtroom 6 (MJS).

VI.   **COURTROOM DECORUM**

The parties' counsel and all persons seated at counsel table with them during the evidentiary hearing shall comply with the following guidelines during all court appearances. These requirements are minimal, not all-inclusive, and are intended to supplement, not supplant or limit, the ethical obligations of counsel under the Code of Professional Conduct.

A.    Counsel shall stand at the lectern while examining any witness, except counsel may approach the Courtroom Deputy Clerk's (CRD) desk or the witness for the purposes of handing or tendering exhibits if permission is first granted by the Court.

B.    Counsel shall stand at or in the vicinity of the lectern while making opening statements or closing arguments except as necessary to refer to exhibits.

C.    Counsel shall address all remarks to the Court, not opposing counsel.

D.    Counsel shall refrain from disparaging personal remarks or acrimony toward opposing counsel, witnessess and parties.

E.    Neither counsel nor witnesses shall address or refer to any party, counsel, court staff or witness by first name.

F.    Only one attorney for each party shall examine each witness on direct or cross-examination.  Only the attorney who examines a witness shall state objections to opposing counsel's questions to that witness.

G.    Only one attorney for each party shall present oral argument on motions, an opening statement, or closing argument except that different motions, the opening statement, or closing argument may be divided among counsel if different subjects are addressed and Court permission is first obtained.

H.    Counsel should request permission before approaching the bench or a witness.

I.    Any hard copy of a document or exhibit counsel wish to have the Court examine should be handed to the Courtroom Deputy Clerk.

J.    Any paper exhibit not previously marked for identification should first be handed to the CRD to be marked before it is tendered to a witness for examination or placed on a viewing screen.

K.    Any exhibit offered in evidence should, at the time of such offer, be handed to opposing counsel, unless pre-marked and a copy is in the possession of opposing counsel.

L.    Exhibits should be moved into evidence after the foundation is laid at the time the exhibit is first used with a witness.  Counsel may not wait until the close of the evidence to move for admission of all exhibits.

M.    Speaking objections are not permitted.  In making objections, counsel should state only the legal grounds for the objection and withhold further comment or argument unless elaboration is requested by the Court.

N.    In examining a witness, counsel shall not repeat, comment on, express or exhibit approval or disapproval of the answer given by the witness.

O.    In opening statements and closing arguments, counsel shall not express counsel's own personal knowledge or personal opinion concerning any matter in dispute.

P.    Counsel shall admonish all persons at counsel table and parties and persons under the direction and/or control of counsel, such as witnesses and other parties, including spectators, present in the courtroom, that gestures, facial expressions, laughing, snickering, audible comments, or other manifestations of approval, disapproval or disrespect during the proceedings are prohibited

Q.    Absent permission form the Court, every witness other than Petitioner shall be excluded from the courtroom until  such time as his or her testimony  is introduced and concluded.

///

-4-

**VII.    UNDISPUTED FACTS**

The parties have stipulated and agreed that the following facts are supported by the evidence referred to below and may be deemed established for purposes of this case:

1. In the early morning hours of January 15, 1997, a fire destroyed the house located at 1319 Ronald Avenue, Modesto, Caliofornia. The house was owned by George Souliotes. Three of the tenants then living in the house – Michelle Jones, Amanda Jones, and Daniel Jones Jr. – perished in the fire. The fourth tenant, Daniel Jones Sr., was not at home.

2. The fire was investigated by Captain Reuscher and Captain Evers of the Modesto Fire Department. Both investigators determined the fire to be the result of arson.

3. Captain Reuscher and Captain Evers both relied on several factors that they believed provided evidence of arson using a flammable liquid. The following factors relied on by Captains Reuscher and Evers are now known not to be indicators of arson using a flammable liquid. These factors are:

a. Deep burning and floor damage to the floor inside the residence and burn patterns on the floor inside the residence and on the concrete floor of the garage.

b. The temperature of the fire, evidenced by deep charring and witness accounts of an "extremely hot" fire.

c. Lack of sufficient fuel for the fire to have occurred without the use of flammable liquid.

4. The floor damage and burn patterns located inside the house and garage that the original investigators attributed to arson using a flammable liquid appear to be the result of flashover burning and fall-down from the roof collapsing and are not indicators of arson using a flammable liquid.

5. Fires involving liquid accelerants do not burn at higher temperatures than fires not involving the use of a flammable liquid.

6. There was sufficient fuel in the house for the fire to have occurred without the use of a flammable liquid.

7. The parties' experts all agree that they cannot determine the cause and origin of the fire based on the available evidence and record as it exists today, including whether the fire was accidental or the result of arson.

8. Captain Reuscher used a "hydrocarbon detector" at the fire scene to search for the possible presence of ignitable liquids. Captain Bruce Elliott of the Modesto Police Department also used the detector to search Petitioner and his clothing for the possible presence of ignitable liquids. The detector gave several positive alerts at the fire scene and on Petitioner's clothes and body.

9. Hydrocarbon detectors commonly deliver false positives and are intended to be used only for presumptive testing to determine what items to collect and submit for laboratory testing.

10. A positive reaction from a hydrocarbon detector is never reliable evidence of the presence of a liquid accelerant without confirmatory lab results.

11. Of the samples collected from the fire scene for laboratory testing, two tested positive for the presence of a medium petroleum distillate (MPD): Sample number 66, a piece of burnt wood from a floorboard in the living room, and sample number 71, a piece of carpet foam from the living room.

12. A pair of black shoes belonging to Petitioner, samples number 16 and 17, tested positive for the presence of a medium petroleum distillate.

13. The MPD on Petitioner's shoes is chemically distinguishable from the MPD found on the carpet samples taken from the fire scene, and the MPDs did not originate from a common source.

14. Detectable MPDs are commonly found on many household products and consumer goods, including the solvents in glues and adhesives used in floor coverings and footwear, residues of dry cleaning solvents, insecticides and cleaning agents.

15. Petitioner did not become aware of the new MPD testing methods until September 21, 2005, when John Lentini sent a letter setting forth his new findings based on his use of the new MPD testing methods.

16. Monica Sandoval testified at trial that she witnessed Petitioner's Winnebago driving up and down Ronald Avenue ten to fifteen times during the approximately two hours prior to the fire. She also testified that she witnessed the Winnebago being parked across the street from 1319 Ronald Avenue, and then saw a man exit the Winnebago and cross the street while carrying a white bag or pillowcase. She testified that the man went behind the residence on 1319 Ronald Avenue and returned a few minutes later empty handed and that soon after she observed flames coming from the residence. Monica Sandoval also testified that she observed Petitioner's face through the front windshield of his Winnebago when he slowed down to look at the house from the corner of Ronald Avenue and Tully Road before driving away.

## VIII.   **DISPUTED FACTS**

1. Whether or not the January 15, 1997 fire at 1319 Ronald Avenue could have occurred from a single point of origin  or whether the damage indicates multiple points of origin.

2. The reliability of Monica Sandoval's eye-witness identification of Petitioner and his vehicle.

3. Whether or not Petitioner was in financial distress at the time of the fire.

4. To what extent, if any, Petitioner would have benefitted financially from the fire through his insurance policy on the house at 1319 Ronald Avenue.

5. When the new MPD testing methods used by Lentini were first discovered and made available to the scientific community**.**

## IX.   **DISPUTED ISSUES OF LAW**

The parties have not raised significant disputes regarding governing law. If and as such disputes arise, they may be raised and addressed by the parties in post-hearing briefing.

///

///

///

-7-

1

## X.    RELIEF SOUGHT

2

### A.    Petitioner

3    Petitioner seeks a finding that he satisfies the actual innocence gateway and is thus

4    entitled to have his substantive claims considered on the merits without regard to whether

5    the statue of limitations has expired.[1] Petitioner also seeks a finding that his stand-alone

6    actual innocence claim is statutorily tolled in light of newly discovered evidence, thereby

7    entitling him to have his claims considered on the merits.

8

### B.    Respondent

9    Respondent seeks dismissal of Petitioner's petition for writ of habeas corpus as

10    untimely.

11

## XI.    STIPULATIONS REGARDING EVIDENCE

12    The parties shall submit stipulations regarding the evidence and exhibits on or

13    before Friday, **January 20, 2012.** Stipulated exhibits shall be marked in the manner

14    described in Section XIII, below.

15

## XII.    WITNESSES

16    Each party has filed lay and expert witness disclosures naming and giving, to the

17    extent known, the business or home address of each witness. Only witnesses listed in this

18    pre-hearing order shall be allowed to testify at trial except as may otherwise be provided

19    by this Court's order after a showing of good cause or by stipulation of the parties and this

20    Court's order thereon.

21    Once the evidentiary hearing begins, the parties' counsel shall provide the Court and

22    opposing counsel the names of all witnesses  each party intends to call the following day

23    and specify the order in which the witnesses are expected to be called.  Per the Court's

24    order, Petitioner shall proceed with his witnesses and presentation of witnesses first;

25

26

27    [1] Petitioner, in the joint pre-hearing statement, requested additional relief in the form of a conditional writ of habeas corpus releasing him from custody pending resolution of his substantive claims. While acknowledging Petitioner's right to file any motions or requests for relief that it sees fit, the Court

28    considers any such request premature and any ruling on the request would reflect accordingly.

accordingly, Petitioner is here directed to advise the Court and opposing counsel on Monday, **January 23, 2012**, of the names of witnesses to be called on Tuesday, January 24, 2012, and the order in which they will be called. Absent contrary pre-arrangement with the Court, each party shall have his witnesses ready to testify in succession in the order listed. The parties' counsel shall notify the Court immediately if an issue arises with regard to compliance with this order.

**A.    Petitioner's Lay Witnesses:**

      1.    George Souliotes

      2.    Daniel DeSantis

      3.    Tim Campbell

      4.    Carly Balletto

**B.    Petitioner's Expert Witnesses:**

      1.    David M. Smith

      2.    Steven W. Carman

      3.    R. Paul Bieber

      4.    John J. Lentini

      5.    Scott Spertzel

      6.    Patrick A. Andler

      7.    Jennifer E. Dysart

      8.    Thomas Streed

**C.    Respondent's Lay Witnesses:**

      1.    Jess Molina

      2.    Dennis Miner

      3.    David Shilling or/Wayne Tyson [2]

      4.    Mike Stone

///

---

[2] The extent to which Mr. Shilling and Tyson will be allowed to testify shall be limited as described below. Respondent's counsel agreed at the hearing that the testimony of one of the two would suffice and there would in no event be a need to call both to testify.

D.   **Respondent's Expert Witness:**

John DeHaan

**XIII.   EXHIBITS**

A.   **Duty to Pre-Mark Exhibits**

To the extent they have not already done so, the parties shall exchange their proposed exhibits as soon as possible and in no event later than January 16, 2012. The parties' counsel shall meet and conduct an exhibit conference no later than **January 16, 2012** to examine and pre-mark evidentiary hearing exhibits and prepare exhibit lists. All joint exhibits (i.e., any documents which the parties agree should be admitted into evidence for all purposes) shall be pre-marked with the prefix "J" and numbered sequentially using roman numerals starting with J-I. Petitioner's exhibits (not jointly agreed upon) shall be pre-marked with the prefix "P" and numbered sequentially using arabic numerals starting with P-1. Respondent's exhibits (not jointly agreed upon) shall be pre-marked with the prefix "R" and labeled with sequential alphabetic letters starting with R-A.  Each such exhibit shall also include, in parentheses following the above-indicated designation, a reference to the location in the record of the trial leading to Petitioner's conviction where the exhibit  appears in that record.  Absence of the latter designation shall indicate the exhibit was not previously a trial exhibit.

B.   **Exhibit Lists**

Not later than **January 20, 2012**, the parties shall file and serve their lists of respective pre-marked exhibits and joint exhibits.

C.   **Submission of Exhibits**

Not later than **January 20, 2012**, the parties shall submit to the clerk's office one original and two copies of all pre-marked trial exhibits. All exhibits also shall be submitted electronically to the Court via e-mail at mjsorders@caed.uscourts.gov. Pursuant to Local Rule 281(b)(11), only those exhibits listed in the parties' pretrial statement will be permitted to be offered into evidence without a showing of good cause or a stipulation.

///

1

**D.**     **Objections**

2     This Court will address objections to exhibits as they arise during the evidentiary

3  hearing.

4

**E.**     **Discovery Documents**

5     Only specifically-designated discovery documents will be eligible for admission into

6  evidence. Therefore, the parties shall file and serve no later than **January 20, 2012** a list

7  of all discovery documents intended to be used at the hearing, identifying the discovery by

8  set number and  reference to the location in the record of the trial leading to Petitioner's

9  conviction if and where the exhibit appears in that record. If a discovery document intended

10  to be used  at the hearing has  not  been  previously lodged,  the  parties shall  also submit

11  the  original and two copies of such document for the Court's use.  Discovery documents

12  (or relevant portions thereof) shall be separately marked and indexed as hearing exhibits

13  (as part of the exhibit marking process described above) or, if necessary, read directly into

14  evidence if and after they have been found to be admissible.

15     This Court will address objections to discovery documents as they arise during the

16  hearing.

17

**F.**     **Deposition Testimony**

18     Deposition testimony shall be designated by page and line number and by reference

19  to the location in the record of the trial leading to Petitioner's conviction if and where the

20  exhibit  appears in that record.  Such designation shall be filed and served no later than

21  **January 20, 2012**. The original certified transcript of any deposition identified in a

22  designation or counter-designation shall be lodged with the clerk's office no later than

23  **January 20, 2012**, if not previously lodged with the Court. The parties must edit proposed

24  video depositions prior to the hearing and be ready to show only those edited parts of the

25  video.

26     This Court will address objections to deposition testimony as they arise during the

27  hearing.

28  ///

-11-

### G.     Post-Trial Exhibit Retention

The party's counsel who introduced exhibits at the hearing shall retrieve the original exhibits from the courtroom deputy following a final decision regarding the issues presented at the hearing. The parties' counsel shall retain possession of and keep safe all exhibits until final judgment and all appeals are exhausted.

## XIV.   PRE-HEARING BRIEFS

The parties may, but  shall not be required to, provide the court with pre-hearing briefs. The parities shall be provided an opportunity to provide additional briefing to the Court following the hearing.

## XV.    MOTIONS IN LIMINE

This Court ORDERS the parties' counsel to meet and confer on anticipated motions in limine and to distill evidentiary issues.  It is the Court's view that most evidentiary issues can be resolved easily with a conference among the Court and counsel, particularly in this non-jury hearing.  Either party may, but is not required to, file motions in limine on issues he believes to necessitate written briefing.

Motions in limine shall be filed and served no later than **January 18, 2012.** Responses to motions in limine shall be filed and served no later than **January 20, 2012.** This Court will neither accept nor consider reply papers. This Court will conduct a hearing on the motions in limine on January 24, 2011 at 9:30 a.m. in Courtroom 6 (MJS).

Moving and opposition papers must be brief, succinct and well-organized.

## XVI.   DISCOVERY ISSUES ADDRESSED DURING PRE-HEARING CONFERENCE

### A.     Habeas Petitions, Discovery, and the Instant Evidentiary Hearing

Unlike other civil litigation, a habeas corpus petitioner is usually not entitled to broad discovery. Bracy v. Gramley, 520 U.S. 899, 901, 904 (1997). Rule 6 of the Rules Governing Section 2254 Cases states that a party may request discovery under the Federal Rules of Civil Procedure. However, discovery is limited to the discretion of the district court and only if good cause is shown. See Rule 6 of the Rules Governing Section 2254 Cases. Court approval of all discovery is necessary. See Rule 6; Advisory Committee Notes to Rule 6

of the Rules Governing Section 2254 Cases.

Specifically, Rule 6 provides:

> **(a) Leave of court required.** A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

> **(b) Requesting discovery.** A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

> **(c) Deposition expenses.** If the respondent is granted leave to take [*4] a deposition, the judge may require the respondent to pay the travel expenses, subsistence expenses, and fees of the petitioner's attorney to attend the deposition.

In Harris v. Nelson, 394 U.S. 286 (1969), the Supreme Court addressed the applicability of civil discovery rules to federal habeas corpus proceedings. The Court explained that the lower courts had jurisdiction to implement discovery in a manner as to dispose of the petition as justice requires. The court reasoned:

> To conclude that the Federal Rules' discovery provisions do not apply completely and automatically by virtue of Rule 81(a)(2) is not to say that there is no way in which a district court may, in an appropriate case, arrange for procedures which will allow development, for purposes of the hearing, of the facts relevant to disposition of a habeas corpus petition. Petitioners in habeas corpus proceedings, as the Congress and this Court have emphasized... are entitled to careful consideration and plenary processing of their claims including full opportunity for presentation of the relevant facts. Congress has provided that once a petition for a writ of habeas corpus is filed, unless the court is of the opinion that the petitioner is not entitled to an order to show cause, the writ must be awarded "forthwith," or an order to show cause must be issued. 28 U. S. C. § 2243. Thereafter, if the court concludes that the petitioner is entitled to an evidentiary hearing, cf. Townsend v. Sain, supra; 28 U. S. C. § 2254, it shall order one to be held promptly. 28 U. S. C. § 2243.

> Flexible provision is made for taking evidence by oral testimony, by deposition, or upon affidavit and written interrogatory. 28 U. S. C. § 2246. Cf. §§ 2245, 2254 (e). The court shall "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U. S. C. § 2243. But with respect to methods for securing facts where necessary to accomplish the objective of the proceedings Congress has been largely silent. Clearly, in these circumstances, the habeas corpus jurisdiction and the duty to exercise it being present, the courts may fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage. Where their duties require it, this is the inescapable obligation of the courts. Their authority is expressly confirmed in the All Writs Act, 28 U. S. C.

-13-

1  § 1651.

2  Harris, 394 U.S. at 298-299.

3       In 1977, Congress enacted the Rules Governing Section 2254 Cases to assist in

4  determining procedure in administering federal habeas petitions. The Rules did not seek

5  to limit the flexibility of the courts to devise appropriate procedures to effectively hear

6  habeas petitions.  In some situations, discovery may be appropriate to replace the need

7  for an evidentiary hearing. Blackledge v. Allison, 431 U.S. 63, 81 (1977). Rule 7 of the

8  Rules Governing Section 2254 Cases allows the Court to more informally direct the parties

9  to expand the record to include additional documents. The purpose of this rule is to allow

10 the judge to dispose of certain issues without the need for an evidentiary hearing. See

11 Advisory Committee Notes to Rule 7 of the Rules Governing Section 2254 Cases (Also

12 noting that "An expanded record may also be helpful when an evidentiary hearing is

13 ordered.").  In light of the Rules Governing Section 2254 Cases and relevant case law,

14 district courts are granted flexibility and may allow discovery to proceed in a manner

15 consistent with the needs of a given petition.

16      Whereas some factual considerations can be resolved by expanding the record, or

17 allowing limited discovery, the present evidentiary hearing raises several significant factual

18 disputes going to the very heart of the case and includes the involvement of experts to

19 address and opine on evidence in Petitioner's lengthy state court criminal proceeding.

20 Based on the breadth and complexity of the issues the Ninth Circuit directed be addressed

21 at the evidentiary hearing, this Court instituted more formal discovery rules in an effort to

22 ensure that all relevant evidence was developed and discovered prior to the evidentiary

23 hearing and that undue surprise and delay was avoided.[3]  Specifically, the Court issued an

24 Evidentiary Hearing Scheduling Order on October 17, 2011. (Scheduling Order, ECF No.

25 84.)  That Order supplanted prior habeas customs and procedures by setting out  specific

26

27       [3]The Ninth Circuit instructed the Court to proceed to Petitioner's evidentiary hearing in an
   expedited manner. (See Order, ECF No. 53 at 3.) While the Ninth Circuit has since expanded its remand

28 to include review of Petitioner's substantive claims should he overcome the statute of limitations
   challenges, the reasons for proceeding with deliberate speed remain.

procedures to be followed in this case in accordance with a schedule to which both parties agreed. It required the parties to disclose the names of expected lay witness by November 14, 2011 and expert witnesses by December 1, 2011. With regard to expert witness disclosure, the order stated:

> On or before December 1, 2011, the parties shall disclose to one another and to the Court in writing all expert witnesses they anticipate may be called to present evidence at the Hearing.  The written designation of experts, to the extent practicable, shall **be made pursuant to Fed. R. Civ. P. Rule 26(a)(2) and shall include all information required thereunder.** Failure to designate experts in compliance with this order may result in the Court excluding the testimony or other evidence offered through such witnesses who are not disclosed pursuant to this order.
>
> The provisions of Fed. R. Civ. P. 26(b)(4) and (5) shall apply to all discovery relating to experts and their opinions.  Experts must be fully prepared to be examined on all subjects and opinions included in the designation.  Failure to comply will result in the imposition of sanctions, which may include striking the expert designation and preclusion of expert testimony. The provisions of Fed. R. Civ. P. 26(e) regarding a party's duty to timely supplement disclosures and responses to discovery requests will  be strictly enforced.

(Scheduling Order at 5.) (Emphasis in original.) In addition to describing the relevant deadlines for witness disclosures, the Court described the effect of the scheduling order:

### VIII. Effect of This Order

> The foregoing order represents the best estimate of the Court and counsel as to the agenda most suitable for the scheduling of this matter consistent with the Ninth Circuit's order that an **expedited hearing** be held. The hearing date reserved is specifically reserved for this case.  If the parties conclude  at any time that the schedule outlined in this order cannot be met, they shall notify the Court immediately. If either party concludes that the other is not cooperating fully in a mutual effort to ensure this schedule is met, that party shall  schedule a telephonic discovery dispute conference with opposing counsel and Magistrate Judge Michael Seng...
>
> **Stipulations extending the deadlines contained herein will not be considered unless they are accompanied by affidavits or declarations, and where appropriate attached exhibits, which establish good cause for granting the relief requested.**
>
> Failure to comply with this order may result in the imposition of sanctions.

(Scheduling Order at 8.) (Emphasis in original.) Further, to ensure discovery or other dispute did not arise and jeopardize the scheduled proceedings, the Court committed to making itself available to address any and all pre-hearing disputes on request and in no

1  anticipated event more than twenty four (24) hours after being requested to do so by either

2  party. (Order at 10, ECF No. 92.) The language of the scheduling order placed the parties

3  on clear notice that untimely requests would be looked upon with disfavor.

4  **B.**  **Effect of Directive to Proceed in an Expedited Manner**

5  Petitioner was convicted on October 20, 2000. (Pet. at 4, ECF No. 1.) After

6  exhausting his state remedies, he filed the instant petition on May 30, 2006. On March 20,

7  2008, the Court dismissed the petition as untimely. (Order, ECF No. 36.) Petitioner

8  appealed. On September 20, 2010, the Ninth Circuit affirmed in part, reversed in part, and

9  remanded the matter for an expedited evidentiary hearing. (Order, ECF No. 48.) The only

10  issue then to be addressed was that of whether Petitioner was entitled to statutory tolling

11  based on newly discovered evidence and therefore could proceed to bring a stand-alone

12  actual innocence claim. The Ninth Circuit held, consistent with its holding in <u>Lee v.</u>

13  <u>Lampert</u>, 610 F.3d 1125, 1128-31 (9th Cir. 2010), that the actual innocence gateway did

14  not overcome the statute of limitations and that Petitioner's other claims for relief were

15  barred.

16  However, on August 2, 2011, an *en banc* decision of the Ninth Circuit reversed <u>Lee</u>

17  and held that the actual innocence gateway was applicable to statute of limitations claims.

18  <u>See</u> <u>Lee v. Lampert</u>, 653 F.3d 929 (9th Cir. 2011). In due course, on August 17, 2011, the

19  Ninth Circuit amended its prior ruling in the present matter in light of the *en banc* decision

20  in <u>Lee v. Lampert</u> and ordered this Court to conduct all proceedings necessary to

21  adjudicate the petition. (Order, ECF No. 69.)

22  Based on this course of events, it was not evident until August, 2011, that Petitioner

23  would be able to attempt to use the actual innocence gateway to overcome the statute of

24  limitations. While the same concerns regarding expeditious resolution of the matter in light

25  of Petitioner's advanced age remained, Petitioner's case became significantly more

26  complex insofar as he became entitled to make a showing of actual innocence and

27  potentially present all of his underlying substantive claims. After conferring with counsel,

28  the Court set what all agreed was an ambitious, but realistically attainable, schedule to

allow appropriate discovery prior to an expedited evidentiary hearing on the issue of whether Petitioner could make a showing of actual innocence sufficient to overcome the statute of limitations. Throughout the process, the Court has been, and remains, impressed with the parties willingness and ability to meet short deadlines and enable the evidentiary hearing to go forward the last week of January, 2012. At the January 5, 2012 conference, the parties re-confirmed their ability and commitment to commence and complete the hearing as scheduled.

### C.   New Witnesses Disclosed by Respondent's Joint Pre-Hearing Statement

Discovery and evidentiary issues arose in connection with submission of the parties Joint Pre-Hearing Statement.   These were addressed and resolved as discussed in chambers and on the record at the January 5, 2012, pre-hearing conference, all as discussed further below.

The first issue related to Petitioner's objection to Respondent's proposal to call three "lay" witnesses not previously disclosed by Respondent: (1) Sarah Yoshida, a criminalist with the California Department of Justice; (2) David Shilling; and (3) Wayne Tyson.

Respondent advised opposing counsel and the Court that she wished to reserve the right to call Ms. Yoshida to testify regarding the quantity of MPDs found in the fire for which Petitioner was convicted of arson and the significance thereof. She acknowledged that she had not yet been able to communicate with Ms. Yoshida, that she did not know if Ms. Yoshida would be willing and able to gather and present such information, and that she did not know whether that information would be enlightening at all, much less helpful to one party or the other. The possibility that Ms. Yoshida might be able to provide relevant information was suggested to Respondent by Respondent's designated expert witness, John DeHaan, at his December 30, 2011, deposition. Apparently, Mr. DeHaan suggested that if the quantity of MPD's found at the scene of the fire were shown to have exceeded an undefined "normal" level, it might suggest the presence of some foreign additive.

Both Mr. Shilling and Mr. Tyson were employed by Tyson Fire Investigations, a

company which conducted, on behalf of Allstate Insurance Company (apparently the insurer of the residence which burned),  an investigation of the fire for which Petitioner was convicted of arson.   Apparently, both Mr. Shilling and Tyson personally investigated the fire scene and took photographs (and potentially other evidence) from the scene. Respondent indicated an intent to call one or the other (but not both) to provide factual evidence relating to the results of their investigation and introduce and authenticate their corresponding report. Respondent's counsel was not aware of the existence of the any such investigation until after  she recently received, sometime in late 2011, and, more recently, reviewed the Stanislaus County District Attorney's file in response to Petitioner's request for its production.

For the reasons discussed in connection with the pre-hearing conference and below, the Court ruled as follows as to whether said witnesses and evidence could be presented at the hearing and thus would necessarily become the subject of further pre-hearing discovery).

1.    Ms. Yoshida

The Court DENIED Respondent's request to present Ms. Yoshida as a witness, but did so without prejudice to Respondent renewing the request if and as his counsel determined that the witness could and would present relevant and admissible testimony and Respondent overcame other legitimate objections to the late identification and production of such a witness.  Respondent's counsel was further advised that she must in all events proceed with extreme immediacy because the prejudice to Petitioner (and hence the burden Respondent would have to overcome) would only increase as time passed.

The denial is based on many factors.  First, as indicated above, there is no reason whatsoever to believe at this time that Ms. Yoshida's has any relevant evidence to offer at the hearing even if she and her evidence had been disclosed in a proper and timely manner. As is seen from the parties statement of agreed facts, the MPD evidence previously considered has been shown to be of no real evidentiary value and, more importantly, all the experts (and the parties) agree that the experts  cannot determine from

1    the evidence still available whether the fire was accidental or the result of arson. (See

2    undisputed facts, supra, 4, 7.) If Ms. Yoshida's testimony were offered as evidence that an

3    accelerant was present, it would have no relevance whatsoever except, perhaps, to

4    suggest that scientific evidence indicated the presence of an accelerant which in turn

5    suggested the fire was caused by arson. Any such evidence would contradict the

6    stipulated facts.

7        Second, although Respondent has classified Ms. Yoshida as a lay witness,

8    Respondent has not advised the Court of any evidence she might be able to offer that

9    would not in fact constitute expert opinion evidence. It seems clear her purpose in testifying

10   would be to describe and qualify her scientific test results and state an opinion (or invite

11   other experts to state opinions) as to the meaning of those results.  These topics go well

12   beyond the knowledge of a lay witness.

13       Based upon what has been presented, the Court finds that Ms. Yoshida  and her

14   testimony are offered to provide expert evidence, not lay  testimony. Expert testimony is

15   governed by Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals,

16   Inc., 509 U.S. 579 (1993). "Rule 702 assigns to the district court the role of gatekeeper and

17   charges the court with assuring that expert testimony rests on a reliable foundation and is

18   relevant to the task at hand." United States v. Hermanek, 289 F.3d 1076, 1093 (9th Cir.

19   2002) (internal quotations omitted). Rule 702 provides:

20         A witness who is qualified as an expert by knowledge, skill, experience,
           training, or education may testify in the form of an opinion or otherwise if: (a)
21       the expert's scientific, technical, or other specialized knowledge will help the
           trier of fact to understand the evidence or to determine a fact in issue; (b) the
22       testimony is based on sufficient facts or data; (c) the testimony is the product
           of reliable principles and methods; and (d) the expert has reliably applied the
23       principles and methods to the facts of the case.

24   In Daubert, 509 U.S. at 593-94, the Supreme Court created a flexible, factor-based

25   approach to analyzing the reliability of expert testimony. These factors can include: (1)

26   whether a method can or has been tested; (2) the known or potential rate of error; (3)

27   whether the methods have been subjected to peer review; (4) whether there are standards

28   controlling the technique's operation; and (5) the general acceptance of the method within

1  the relevant community. See Daubert, 509 U.S. at 593-94.

2  The Court ordered the parties to disclose experts by December 1, 2011, and at the
3  same  time provide the experts' reports to inform the opposing party as to expected expert
4  testimony. Ms. Yoshida was not so disclosed.  Indeed she is not yet ready to be disclosed
5  and may not be for some time, if at all. Without providing Petitioner an expert report and
6  a meaningful opportunity to depose and respond to the expert prior to the hearing,
7  permitting  such a witness at this late juncture would unduly prejudice Petitioner. It also
8  would necessitate giving Petitioner the opportunity to retain and disclose a rebuttal expert.
9  Any such activity would threaten not only the parties proper preparation for the hearing, but
10  also the likelihood the hearing could proceed as scheduled.

11  The potential effects aside, Respondent's delay in presenting the witness itself is
12  cause to deny the request. The Court acknowledges and genuinely appreciates that both
13  parties have been struggling mightily to meet agreed-upon deadlines and hearing dates.
14  There is no suggestion that respondent's counsel has failed to proceed industriously.
15  There is no suggestion that she was aware of the possibility of calling Ms. Yoshida as a
16  witness prior to December 30, 2011.  However, Respondent, the State of California, has
17  been  aware of the central role MPD's played in this case since the very beginning of the
18  case and certainly since the date of the Ninth Circuit's first remand order. Since August,
19  2011, Respondent was aware Petitioner could proceed with his actual innocence claim and
20  that lay and expert witnesses would have to be identified to present relevant testimony.
21  Other than counsel's assurance that she has been working diligently on the case,
22  Respondent has not provided any evidence that would allow the court to find there was
23  good cause for delay in identifying the expert.

24  Respondent's request to present Ms. Yoshida is denied as and for the reasons
25  aforesaid.

26  2.     Mr. Shilling and Tyson

27  For similar reasons, the court DENIES Respondent the opportunity to present Mr.
28  Shilling or Mr. Tyson as an expert witnesses or to present the fire investigation reports of

1  either  into evidence. Nevertheless, one or the other may testify for the limited purpose of

2  authenticating photographs or physical evidence recovered from the fire scene if it can be

3  shown that presentation of such evidence will not prejudice Petitioner or delay the hearing.

4      As with Ms. Yoshida, the Court is unable to identify any value in the testimony of

5  either of these witnesses except perhaps to identify and authenticate physical evidence or

6  photographs, which will be allowed,  or to undertake to opine, as an expert fire investigator,

7  as to the cause of the fire. To the extent that Respondent seeks to produce their opinions

8  or their investigatory conclusions, they would be functioning as expert witnesses. See e.g.,

9  United States v. Hebshie, 754 F. Supp. 2d 89, 112-115 (D. Mass. 2010) (describing how

10  testimony regarding fire investigation, including findings regarding cause and origin, raise

11  issues of scientific reliability and should be challenged by way of a Daubert hearing.).  To

12  the extent they are to provide expert testimony, they should have been disclosed earlier

13  and a written report provided in accordance with Fed. R. Civ. P. Rule 26(a)(2) and this

14  Court's order. Respondent has not shown good cause for the delay in presenting the

15  witness. Although Respondent's counsel has not been lax in her preparation, the existence

16  and identity of such witnesses should have been known to Respondent since the beginning

17  of this case and certainly since the Ninth Circuit's remand order. Moreover, even if there

18  had been a showing of good cause, the belated designation would not allow Petitioner

19  sufficient time to review, investigate, and prepare to respond to  findings of such experts.

20      Equal, if not greater, concern arises out of the proposed substance of the testimony

21  from such a witness. In the joint statement, Respondent asserts that Mr. Schilling would

22  testify that his investigation ruled out any accidental causes of the fire at the property.

23  (Joint Statement at 6, ECF No. 108.) However, the parties have stipulated and agreed that

24  "[t]he parties' experts all agree that they cannot determine the cause and origin of the fire

25  based on the available evidence and record as it exists today, including whether the fire

26  was accidental or the result of arson." (Id. at 1-2.)  The Court does not understand the

27  value of proffering a witness  to undertake to contradict agreed, undisputed facts including

28  those provided by  Respondent's own designated expert witness.

1    Finally, the Court is confident that its pre-hearing order was quite clear not only as

2    to the effect of failure to comply with the deadlines set forth, but also as to what action and

3    what showing would be necessary to gain relief from a failure to comply.  No such showing

4    has been made.

5    Nevertheless, in keeping with the holding of House v. Bell that all evidence should

6    be reviewed, the Court will allow Respondent to introduce  photographs or other physical

7    evidence properly produced and authenticated by Mr. Shilling or Tyson. To the extent

8    prejudice and delay can be avoided, Respondent's expert witness may offer testify

9    regarding the significance of such evidence.

10           **D.    Testimony of Carly Balletto and Re-enactment Video**

11    Respondent objects to Petitioner's presentation of a re-enactment video prepared

12    by Petitioner's lay witness, Ms. Balletto, on January 2, 2012, on the grounds that although

13    he identified Ms. Balleto as a witness, he did not disclose his intent to produce video-

14    graphic evidence. At the hearing, Petitioner explained that a variety of factors (e.g., delay

15    in retrieving and making Petitioner's RV operable; delay in securing access to a witness's

16    former apartment to make the video from the witnesses' viewpoint) prevented the video

17    from being made until January 2, 2012.  Petitioner agreed to make a copy of the video

18    available to Respondent forthwith.   Petitioner also noted that the witness had been

19    identified and that no request to conduct discovery of that witness had been made.  Finally,

20    Petitioner  correctly noted  that no agreement or order of the Court obligated the parties

21    to identify the substance of lay witnesses testimony prior to filing of the joint pre-hearing

22    statement.

23    Petitioner is correct. The Court shall not preclude the testimony of Ms. Balletto or

24    the re-enactment video based on any failure to disclose the nature of the testimony of the

25    lay witness or the contents of the video tape. The Court's scheduling order required the

26    naming of all lay witnesses on November 14, 2011, to enable the parties to conduct

27    discovery relating to the witnesses if and as each saw fit. The scheduling order did not

28    require disclosure of the evidence to be presented by lay witnesses.  The first time the

parties were directed by the Court to describe the substance of lay testimony was in the joint pre-hearing statement. Petitioner complied with all that was required of him when it was required of him.  Moreover, Petitioner's counsel represented to the Court and, without refutation, to opposing counsel that he would have voluntarily advised Respondent's counsel of the nature of proposed lay witness testimony if he had been asked to do so, but he was not.

Respondent has suggested that such a duty to disclose (and perhaps even a liberality in allowing respondent to make belated disclosures of evidence) is implied in Rule 7 of the Rules Governing Section 2254 Cases.  When a Court allows the parties to expand the record, Rule 7(c) allows the opposing party "an opportunity to admit or deny [the] correctness" of the materials. Rule  7 was enacted "to enable the judge to dispose of some habeas petitions... without the time and expense required for an evidentiary hearing." Advisory Committee Notes, Rule 7 of the Rules Governing Section 2254 Cases. Rule 7(c) provides the opposing party an opportunity to review and challenge materials informally introduced. Here, all evidence shall be presented in accordance with the Court's orders and in the  presentation of evidence in the evidentiary hearing.  Respondent retains the right to challenge the admission of all evidence, including the video evidence, at or before the evidentiary hearing. The concerns raised by Rule 7(c) are not present in this case, and the Court does not interpret Rule 7 to require disclosure of witnesses or evidence not otherwise ordered by the Court's scheduling order. Petitioner's witness and the re-enactment video shall not be prevented from being introduced at the evidentiary hearing on such grounds.

///

///

///

///

///

///

**XVII.  <u>COMPLIANCE WITH THIS ORDER</u>**

Compliance with the terms of this order is mandatory.  This Court will strictly enforce the requirements of this pre-hearing order. Counsel and parties are subject to sanctions for failure to fully comply with its terms. This Court will modify the  order  "only to  prevent manifest injustice."  Fed. R. Civ. P. 16(e).


IT IS SO ORDERED.

Dated:   ___January 10, 2012___        _____ /s/ *Michael J. Seng*_____

UNITED STATES MAGISTRATE JUDGE