1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17
18

| | |
|---|---|
| GEORGE SOULIOTES, ) | 1:06-cv-00667 AWI MJS HC |
| ) | |
| Petitioner, ) | |
| ) | ORDER DISCHARGING ORDER TO |
| v. ) | SHOW CAUSE (Doc. 152) |
| ) | |
| ANTHONY HEDGPETH, Warden, ) | ORDER REQUIRING RESPONDENT TO |
| ) | FILE AN ANSWER |
| Respondent. ) | |
| ) | THIRTY (30) DAY DEADLINE |
| _____ ) | |

19
20

I.      **INTRODUCTION**

21
22
23
24
25
26

        The interplay of the doctrines of exhaustion of state remedies and procedural default with respect to federal habeas corpus results in a paradox.[1] By not exhausting state remedies, a claim may nonetheless be considered exhausted by the failure to do so.  As described below, the Court discharges the order to show cause - not because Petitioner has properly exhausted his claims in state court - but, by failing to present them in state court, and no longer being able to return to do so, the claims are considered technically exhausted and are

27
28

_____

        [1] In the words of Nobel Prize winning physicist Niels Bohr: "How wonderful that we have met with a paradox. Now we have some hope of making progress."

instead subject to the requirements of procedural default. While the claims may still be barred based on procedural default, the amended petition is not considered a mixed petition of exhausted and unexhausted claims subject to dismissal.

## II.   PROCEDURAL HISTORY

On July 12, 2012, Petitioner filed a first amended petition for writ of habeas corpus ("amended petition") including three new claims that were either not presented or at most partially presented before the state courts. (1st Am. Pet., ECF No. 151.) On July 18, 2012, the Court ordered Petitioner to show cause why the petition should not be dismissed for failure to exhaust state remedies. (Order to Show Cause, ECF No. 152) Petitioner responded to the order to show cause on July 23, 2012 (Resp., ECF No. 153), Respondent filed an opposition to the response on July 30, 2012 (Opp'n., ECF No. 154), and Petitioner filed a reply on July 31, 2012 (Reply, ECF No. 155.).

## III.   EXHAUSTION

### A.   Petitioner's Assertions

Petitioner, in his reply, concedes that claims four, six and seven of the amended petition were not properly presented to the California Supreme Court. (Resp. at 2.) Despite his failure to properly exhaust the claims, Petitioner proposes two grounds on which the Court should proceed to consider them. First, Petitioner contends that the California Supreme Court would hold the claims to be procedurally defaulted, and so they are "technically exhausted." See Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir. 2007) (en banc). Secondly, Petitioner asserts that this case presents "exceptional circumstances of peculiar urgency" that warrant dispensing with the exhaustion requirement and proceeding to the merits of the claims. See Hendricks v. Zenon, 993 F.2d 664, 672 (9th Cir. 1993).

### B.   Respondent's Assertions

Notwithstanding Petitioner's concession that claims four, six and seven were not fairly presented to the state court, Respondent goes to some length to explain that the claims are unexhausted. (Opp'n. at  4-5.) Further, Respondent asserts that Petitioner's first claim of his amended petition is also unexhausted as it relies on facts that were not presented to the state

1   court. (Id. at 6-7.)

2        Respondent argues that the petition must be dismissed because the claims were not

3   exhausted in state court and that Petitioner's 'technical exhaustion' argument  "files in the face

4   of the exhaustion requirement." Futility of an attempt to exhaust the claims in state court,

5   Respondent asserts, cannot relieve Petitioner of the need to present claims to the state court.

6        Finally, Respondent argues that no exceptional circumstance exception to the

7   exhaustion requirement exists,  but even if it did, Petitioner would still be able to present his

8   untimely claims in state court based on actual innocence. See In re Robbins, 18 Cal. 4th at

9   780.

10       **C.   Analysis**

11            1.   Technical Exhaustion

12       The Court agrees with Petitioner that the 'technical exhaustion' doctrine applies to

13   claims to which no state remedies are available, even when the remedy is no longer available

14   based on Petitioner's failure to seek state court review in a timely manner. Woodford v. Ngo,

15   548 U.S. 81, 92-93 (2006). In Woodford v. Ngo, the Supreme Court described the federal

16   habeas exhaustion requirement, including technical exhaustion, as follows:

17            The habeas statute generally requires a state prisoner to exhaust state
         remedies before filing a habeas petition in federal court. See 28 U.S.C. §§
18       2254(b)(1), (c). "This rule of comity reduces friction between the state and
         federal court systems by avoiding the 'unseem[liness]' of a federal district court's
19       overturning a state-court conviction without the state courts having had an
         opportunity to correct the constitutional violation in the first instance." O'Sullivan
20       v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999)
         (alteration in original). A state prisoner is generally barred from obtaining federal
21       habeas relief unless the prisoner has properly presented his or her claims
         through one "complete round of the State's established appellate review
22       process." Ibid. In practical terms, the law of habeas, like administrative law,
         requires proper exhaustion, and we have described this feature of habeas law
23       as follows: "To . . . 'protect the integrity' of the federal exhaustion rule, we ask
         not only whether a prisoner has exhausted his state remedies, but also whether
24       he has *properly* exhausted those remedies . . . ." Id., at 848, 119 S. Ct. 1728,
         144 L. Ed. 2d 1 (citation omitted; emphasis in original).

25
             The law of habeas, however, uses terminology that differs from that of
26       administrative law. In habeas, the sanction for failing to exhaust properly
         (preclusion of review in federal court) is given the separate name of procedural
27       default, although the habeas doctrines of exhaustion and procedural default "are
         similar in purpose and design and implicate similar concerns," Keeney v.
28       Tamayo-Reyes, 504 U.S. 1, 7, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992). See

1
2
3
4
5
6
7

> also Coleman v. Thompson, 501 U.S. 722, 731-732, 111 S. Ct. 2546, 115 L. Ed.
> 2d 640 (1991). In habeas, state-court remedies are described as having been
> "exhausted" when they are no longer available, regardless of the reason for their
> unavailability. See Gray v. Netherland, 518 U.S. 152, 161, 116 S. Ct. 2074, 135
> L. Ed. 2d 457 (1996). Thus, if state-court remedies are no longer available
> because the prisoner failed to comply with the deadline for seeking state-court
> review or for taking an appeal, those remedies are technically exhausted, ibid.,
> but exhaustion in this sense does not automatically entitle the habeas petitioner
> to litigate his or her claims in federal court. Instead, if the petitioner procedurally
> defaulted those claims, the prisoner generally is barred from asserting those
> claims in a federal habeas proceeding. Id., at 162, 116 S. Ct. 2074, 135 L. Ed.
> 2d 457; Coleman, supra, at 744-751, 111 S. Ct. 2546, 115 L. Ed. 2d 640.

Woodford, 548 U.S. at 92-93.

8
9
10
11
12
13
14
15
16

Clearly, recent Supreme Court authority requires this Court to consider claims that were not exhausted and no longer capable of review in state court as technically exhausted and subject to the doctrine of procedural default. The technical exhaustion doctrine has been clearly and repeatedly stated by the Supreme Court. Id. at 109 (Stevens, J., dissenting) ("[W]e decided no fewer than six cases in which we stated explicitly that a habeas petitioner satisfies the statutory exhaustion requirement so long as state-court remedies are no longer available to him at the time of the federal-court filing, regardless of the reason for their unavailability.") (listing cases).

17
18

The Ninth Circuit has adhered to the technical exhaustion doctrine set forth by the Supreme Court:

19
20
21
22
23
24
25

> The Supreme Court has noted that a habeas petitioner who has defaulted
> his federal claims in state court meets the technical requirements for exhaustion;
> there are no state remedies any longer available to him. In cases such as this,
> where a petitioner did not properly exhaust state remedies and the court to
> which the petitioner would be required to present his claims in order to meet the
> exhaustion requirement would now find the claims procedurally barred, the
> petitioner's claim is procedurally defaulted. In light of the procedural bar to Smith
> returning to state court to exhaust his state remedies properly, the relevant
> question becomes whether Smith's procedural default can be excused, not
> whether Smith's failure to exhaust can be excused. Therefore, the exceptions
> to the exhaustion requirement set forth in § 2254(b) are irrelevant to Smith's
> petition. Rather, we must determine whether we can excuse Smith's procedural
> default under the applicable exception to that rule.

26
27

Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir. 2007); see also Cooper v. Neven, 641 F.3d 322, 327 (9th Cir. 2011).

28

The technical exhaustion doctrine usually provides little relief.  While a petitioner need

1  not prove the claims were exhausted, they are considered procedurally defaulted and "federal

2  review of the claims is barred unless the prisoner can demonstrate cause for the default and

3  actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure

4  to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S.

5  at 750. Clearly, the vast majority of such claims are barred from federal review due to

6  procedural default.

7      Respondent fails to present any rationale for the Court to refuse to apply the technical

8  exhaustion doctrine as described by the Supreme Court and the Ninth Circuit. Instead,

9  Respondent asserts that the potential futility of presenting the claims to the state court should

10  not circumvent Petitioner's requirement to exhaust the claims before the state court.

11  Respondent relies on Engle v. Isaac, 456 U.S. 107, 130 (1982) and Roberts v. Arave, 847

12  F.2d 528, 530 (9th Cir. 1988) for this proposition. In Engle, the Supreme Court held that futility

13  of raising a trial objection does not excuse failure to comply with an Ohio rule mandating

14  contemporaneous objections to jury instructions and therefore serve as cause for procedural

15  default. 456 U.S. at 130. However, the court in Engle also explicitly described the technical

16  exhaustion doctrine and explained that previously unpresented claims for which remedies are

17  no longer available in state court are nonetheless exhausted. Id. at 125, n.28. Since the

18  Supreme Court has repeatedly affirmed the technical exhaustion doctrine, this Court shall not

19  read the futility language of Engle to require actual exhaustion.

20      Respondent also cites Roberts for the proposition that "[T]he apparent futility of

21  presenting claims to state courts does not constitute cause for procedural default." 847 F.2d

22  at 530. In Roberts, the court implicitly recognized that the petitioner's claims were technically

23  exhausted because he had failed to petition the Idaho Supreme Court for review and evidently

24  no longer could do so. In light of petitioner's failure to exhaust his state remedies the court

25  considered whether Roberts could "demonstrate the 'cause' and actual 'prejudice' necessary

26  to obtain federal habeas relief in the face of his procedural default." Id. (emphasis added).

27  Both Engle and Roberts support the application of the technical exhaustion doctrine.

28  Respondents contention that futility to present state claims requires the application of the

1  exhaustion doctrine is without merit.

2              2.    Petitioner's Claims Exhausted

3      As the technical exhaustion doctrine is well established by the Supreme Court and

4  Ninth Circuit, the Court must determine if Petitioner no longer has any state remedies

5  available. "In determining whether a remedy for a particular constitutional claim is 'available,'

6  the federal courts are authorized, indeed required, to assess the likelihood that a state court

7  will accord the habeas petitioner a hearing on the merits of his claim." Phillips v. Woodford,

8  267 F.3d 966, 974 (9th Cir. 2001) (quoting Harris v. Reed, 489 U.S. 255, 268 (1989)

9  (O'Connor, J., concurring)). "[F]ederal courts should defer action only if there is some

10 reasonable probability that [state] relief will actually be available." Matias v. Oshiro, 683 F.2d

11 318, 320 (9th Cir. 1982) (quoting Powell v. Wyrick, 657 F.2d 222, 224 (8th Cir. 1981)).

12     Respondent asserts that despite the delay, Petitioner may still be able to bring his claim

13 in state court based on a showing of actual innocence. (Opp'n at 8.) Under California law, "A

14 claim that is substantially delayed without good cause, and hence is untimely, nevertheless

15 will be entertained on the merits if the petitioner demonstrates . . . (ii) that the petitioner is

16 actually innocent of the crime or crimes of which he or she was convicted." In re Robbins, 18

17 Cal. 4th 770, 780 (1998). In light of Petitioner's showing of innocence in connection with the

18 instant petition, Respondent's assertion is plausible.

19     However, there are three flaws in Respondent's proposition. First, the showing of

20 innocence in California is significantly more stringent than the federal showing required under

21 Schlup v. Delo. 513 U.S. 298, 314-315 (1995). The standard set forth by the California

22 Supreme Court likely requires the  truly persuasive demonstration of innocence alluded to by

23 the Supreme Court in Herrera v. Collins. 506 U.S. 390, 417 (1993); see In re Lawley, 42 Cal.

24 4th 1231, 1241 (2008). The California Supreme Court has held that the innocence exception

25 requires:

26         [N]ewly discovered, *irrefutable evidence of innocence* of the offense or
           degree of offense of which the petitioner was convicted. Although the evidence
27         could and should have been discovered earlier, the delay in making the claim
           would not be a bar to consideration of the merits of the petition if the petitioner
28         satisfied the court that the evidence was such that it would "*undermine the entire*

1

2

3

> *prosecution case and point unerringly to innocence or reduced culpability.*" ( <u>People v. Gonzalez</u>, supra, 51 Cal.3d 1179, 1246.) Evidence relevant only to an issue already disputed at trial, which does no more than conflict with trial evidence, does not constitute " 'new evidence' that fundamentally undermines the judgment.' "

4

<u>In re Clark</u>, 5 Cal. 4th 750, 798 (1993) (emphasis added).[2] While Petitioner has been found

5

to meet the <u>Schlup</u> actual innocence standard, it does not necessarily follow that he could

6

present a sufficient showing of innocence in state court to overcome his untimely filing.

7

Second, <u>In re Clark</u>, by its own terms limits the timeliness exception to capital cases.

8

5 Cal. 4th at 797 ("The magnitude and gravity of the penalty of death persuades us that the

9

important values which justify limits on untimely and successive petitions are outweighed by

10

the need to leave open this avenue of relief."). Accordingly, Petitioner does not appear eligible

11

for the "fundamental miscarriage of justice" exception set forth by the California Supreme

12

Court in <u>Clark</u> and <u>Robbins</u> because he was not sentenced to death.

13

Finally, it should be noted that Petitioner's substantive claim of innocence based on

14

newly discovered evidence presented to the California Supreme Court was governed by the

15

same applicable standard set forth in <u>Clark</u>[3], and was summarily denied. (<u>See</u> Mot. to Dismiss,

16

Lodged Doc. 9 at 40-45 ("State Petition"), Lodged Doc. 10.) In the state petition, Petitioner

17

asserted that the newly discovered evidence of the MPDs found on Petitioner's shoes and at

18

the fire scene, together with trial counsel's failure to present witnesses, established Petitioner's

19

innocence. (<u>Id.</u>) Petitioner's ninety-seven (97) page petition drafted by counsel provided

20

---

21

22

23

24

[2] <u>But see In re Hall</u>, 30 Cal. 3d 408, 423 (1981) ("In so holding, however, we did not intend to impose either the hypertechnical requirement that each bit of prosecutorial evidence be specifically refuted, or the virtually impossible burden of proving there is no conceivable basis on which the prosecution might have succeeded. It would be unconscionable to deny relief if a petitioner conclusively established his innocence without directly refuting every minute item of the prosecution's proof, or if a petitioner utterly destroyed the theory on which the People relied without rebutting all other possible scenarios which, if they had been presented at trial, might have tended to support a verdict of guilt.").

25

26

27

28

[3] <u>See In re Lawley</u>, 42 Cal. 4th at 1239 ("It is true we referenced the <u>Lindley</u> standard for showing actual innocence in <u>In re Clark</u>, supra, 5 Cal.4th at page 798, footnote 33, a case analyzing when a showing of actual innocence might support an exception to the bar against successive or untimely petitions. In doing so, however, we did not tear the standard from its roots and render it applicable only to procedural default cases; instead, both before and after <u>In re Clark</u> we have consistently applied it as the relevant standard for deciding substantive actual innocence claims . . .").

significant factual detail regarding the claim. In presenting the claim, Petitioner referred to the evidence relating to the failure of defense counsel to call witnesses, including an expert witness to rebut the conclusions of the fire experts for the prosecution, an expert witness to discuss the fallibility of eyewitness identifications, a financial expert, an expert to discuss the unstable mental state of one of the victims, and lay witnesses providing circumstantial evidence of innocence. (See generally State Pet.) In further support, Petitioner provided at least fourteen declarations from relevant witnesses that were not called to testify at trial or provide evidence supporting Petitioner's innocence. (Id.)  Despite the significant factual support, the California Supreme Court denied the claim. In light of the previous denial, it is improbable, even if the timeliness exception exists for non-capital cases, that the state court would allow Petitioner to present his claims. Accordingly, there is no reasonable probability that state relief remains available to Petitioner.

Regardless, requiring Petitioner to return to state court to attempt to exhaust his state court remedies would frustrate the pursuit of justice. "[D]ismissing such petitions for failure to exhaust state court remedies would often result in a game of judicial ping-pong between the state and federal courts, as the state prisoner returned to state court only to have the state procedural bar invoked against him." Harris v. Reed, 489 U.S. 255, 269-270 (1989) (O'Connor, J., concurring).

Accordingly, this Court finds that the claims of the amended federal petition that were not presented to the state court are technically exhausted and the Petition is not a mixed petition of exhausted and unexhausted claims subject to dismissal. See Rose v. Lundy, 455 U.S. 509, 510 (1982).

3.    Exceptional Circumstances Requiring Waiver of Exhaustion

The Ninth Circuit has stated that "[t]he requirement of exhaustion of remedies is not jurisdictional. It is essentially a matter of federalism and comity, and we have the discretion to dispense with the rule in rare cases where exceptional circumstances of peculiar urgency are shown to exist." Hendricks, 993 F.2d at 672 (citations and internal quotations omitted); see also Granberry v. Greer, 481 U.S. 129, 134 (1987). This exception has been applied by at

1   least one district court. <u>See</u> <u>Simmons v. Blodgett</u>, 910 F. Supp. 1519, 1524 (W.D. Wash.

2   1996). There, the court explained the exceptional circumstances requiring the court to

3   dispense with the exhaustion requirement to serve the interests of justice:

4              Petitioner has been imprisoned for over eleven years pursuant to a
           conviction which is now subject to serious challenge. His entire constitutional

5           claim hinges on the testimony and credibility of one witness, who is elderly,
           marginally competent, and in poor health. Although his state court appeal is

6           proceeding with due speed, the parties agree that final resolution of this matter
           by the state courts is at least a year away. Because petitioner's ability to prove

7           his claim continues to diminish rapidly over time, and is at risk of being lost,
           justice requires that his habeas petition be heard expeditiously.

8

9   <u>Id.</u> It is noted that this decision occurred before the enactment of the Antiterrorism and

10  Effective Death Penalty Act on April 24, 1996. However, it is reasonable to believe that

11  equitable doctrines survive its enactment. <u>See</u> <u>Holland v. Florida</u>, 130 S. Ct. 2549, 2560 (2010)

12  ("[E]quitable principles have traditionally governed the substantive law of habeas corpus, for

13  we will not construe a statute to displace courts' traditional equitable authority absent the

14  clearest command.") (citations and internal quotations omitted).

15          While an exception to the exhaustion requirement may exist here due to the exceptional

16  circumstances of this case, the Court need not make that determination in light of the fact the

17  claims of the amended petition are found to be either exhausted or technically exhausted.

18              4.    Exhaustion of Petitioner's First Claim

19          Respondent asserts in his reply that Petitioner's first claim of the amended petition was

20  not properly presented to the California Supreme Court and therefore not exhausted. The

21  Court need not address this claim.  As with claims four, six and seven, claim one, if not

22  properly presented, is now technically exhausted for the same reasons set forth above.

23          All the claims of the amended petition are either exhausted or technically exhausted,

24  and as such the amended petition is not subject to dismissal for failing to exhaust state

25  remedies.

26      **D.    Conclusion**

27          All of the claims of the amended petition are either exhausted or technically exhausted.

28  The Petition is not a mixed petition of exhausted and unexhausted claims requiring dismissal.

1  See Rose, 455 U.S. at 510. Instead, the claims that are technically exhausted are subject to

2  procedural default.  Respondent may present in his answer arguments as to why the claims

3  are barred by way of procedural default.[4]

4        The order to show cause for failure to exhaust state remedies is hereby discharged.

5  **IV.**    **ORDER REQUIRING RESPONDENT TO FILE AN ANSWER**

6        Respondent is ordered to file an answer addressing the merits of the amended petition

7  within thirty (30) days of the date of service of this order. While Respondent may include all

8  applicable affirmative defenses, the answer is to address the substantive merits of Petitioner's

9  claims. The answer and all subsequent pleadings shall conform to the Court's May 29, 2007

10  briefing schedule, as modified by this order, to the extent applicable. Any further exhibits

11  should be provided and labeled in a manner consistent with the exhibits already provided to

12  the Court.

13        As this case proceeds, the Court encourages the parties to focus on the substantive

14  law and argument as to why Petitioner's claims should or should not be denied (to include, as

15  appropriate, citations to the record supporting such arguments). Given the extent of the

16  proceedings in this case to date, the Court is well aware of its factual and procedural history.

17  It will not be productive for either party to devote substantial attention to the already well-

18  known history of this case.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25

26

27      [4] If such arguments are presented, Respondent is strongly encouraged to explain why Petitioner's procedural default would not be rendered moot in light of this Court's prior finding of the fundamental miscarriage of justice exception has been met based on actual innocence under Schlup. 513 U.S. at 314-315. (See Findings

28  & Recommendation and Order, ECF Nos. 141, 150.) Such explanation need not, and should not, readdress the propriety of the Court's said finding.

U.S. District Court

E. D. California

**V.**    **ORDER**

Accordingly, it is ORDERED that:

1)    The order to show cause is hereby DISCHARGED (Doc. 152);

2.)   Respondent is to file an answer to the amended petition with thirty (30) days of the service of this order; and

3.)   All subsequent pleadings shall conform to the Court's May 29, 2007 briefing schedule (ECF No. 8) to the extent applicable.

IT IS SO ORDERED.

Dated:    August 1, 2012                    /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE